UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| DOUGLAS JOHNSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 17-cv-1212-JES-JEH |
| ) | |
| CITY OF EAST PEORIA, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## ORDER AND OPINION

Now before the Court is Defendants' Partial Motion for Summary Judgment (Doc. 34). Plaintiff has filed a Response (Doc. 37) and Defendants have filed a Reply (Doc. 42). The matter is therefore ripe for review. For the reasons set forth below, Defendants' Motion (Doc. 34) is GRANTED IN PART and DENIED IN PART.

### BACKGROUND

The following facts are undisputed. Plaintiff Douglas Johnson has been diagnosed with bipolar disorder, anxiety, and partial symptomatic epilepsy, although the latter diagnosis came after the incident giving rise to this suit. (Docs. 42 at 3, 37 at 5-6). Prior to August 22, 2016, Plaintiff had suffered two seizures, at least one of which was related to head trauma. (Docs. 37 at 5, 42 at 6).

On August 22, 2016, Plaintiff was doing schoolwork and watching television in his second-floor bedroom with his girlfriend, Ahna Ayler. (Doc. 42 at 17). Plaintiff began convulsing, foaming at the mouth, and making choking noises as his eyes became unfocused and rolled back in his head. (Doc. 42 at 2). Ayler called for Plaintiff's mother, Susan O'Neal, and telephoned 911, informing the operator Plaintiff was having a seizure. (Doc. 42 at 2, 8).

Defendants Erick Duckworth, Grant Hangartner, Kim Riggenbach, and Sam Sauder are firefighters and emergency medical technicians. (Doc. 34 at 1). Along with Zachery Knaus, who is not a party to this case and was then an intern with the East Peoria Fire Department (Doc. 34-9 at 4), Defendants Duckworth, Hangartner, Riggenbach, and Sauder were dispatched to respond to the 911 call. (Doc. 37 at 1).

The accounts begin to diverge at this point, but the broad outlines remain undisputed. Knaus, Defendant Sauder, and Defendant Hangartner approached the house and briefly spoke with O'Neal, before proceeding upstairs. (Doc. 37 at 6, 2). Defendants Duckworth and Riggenbach set up a cot outside of the house. (Doc. 37 at 2). The parties do not agree precisely what Plaintiff's condition was when the present Defendants and Knaus arrived in his room, but at minimum he was either not speaking or not speaking coherently and did not appear fully oriented. (Docs. 34 at 4, 37 at 6, 42 at 9). They then spoke with Ayler and O'Neal. (Doc. 37 at 7). Defendant Sauder instructed Plaintiff to walk to the cot outside; although Plaintiff needed to be directed, he walked under his own power down the stairs. (Docs. 34 at 5, 37 at 7-8).

Between the bottom of the stairs and the front door, Plaintiff's pants began to fall down and Defendant Sauder attempted to pull them up. (Docs. 37 at 8, 42 at 10). Plaintiff turned at least the top half of his body in a manner Defendants Riggenbach and Sauder state they found aggressive. (Docs. 37 at 8, 42 at 10). He then ran out the front door, down the front steps, and into the driveway, falling three times as he ran. (Docs. 37 at 8-9, 42 at 10-11). Defendant Sauder and Knaus, along with at least one other Defendant—Defendants initially stated it was Riggenbach, which Plaintiff disputes, but admit it was Hangartner in their Reply—followed Plaintiff out and were able to catch up with him. (Docs. 37 at 9-10, 42 at 2). What happened next is disputed in large part, but the parties agree that Defendant Sauder bear-hugged Plaintiff, both

Defendant Sauder and Plaintiff ended up on the ground, and Defendants Duckworth, Riggenbach,[1] and Sauder, along with Knaus, restrained Plaintiff on the ground. (Docs. 37 at 10, 42 at 11-12). What is disputed is whether Plaintiff was disoriented while running (Doc. 42 at 10-11), whether Plaintiff was behaving aggressively (Doc. 37 at 10), whether Plaintiff was prone or supine on the ground (Docs. 37 at 10-11, 42 at 11-12), and how Defendants restrained Plaintiff (Docs. 37 at 10-13; 42 at 11-12, 15). Defendants state, and Plaintiff disputes, that at some point Plaintiff struck Defendant Duckworth in the jaw. (Docs. 34 at 7, 37 at 12).

Defendants called the police. (Doc. 37 at 13). Defendant Bradley Catton, an officer with the East Peoria Police Department, arrived and handcuffed Plaintiff. (Doc. 37 at 2). Defendant S.H. Gann, another police officer, arrived subsequently. (Doc. 37 at 14). Plaintiff was loaded into an ambulance and taken to the hospital. (Doc. 37 at 2). At some point, Defendants Duckworth, Riggenbach, and Sauder told Defendant Catton that Plaintiff had struck Defendant Duckworth in the face. (Doc. 37 at 13). Plaintiff was arrested for aggravated battery by Defendant Catton five days later, with Defendant Catton having learned in the interim that Plaintiff had suffered a seizure, had taken off running and stumbling, and did not recall the relevant events; Defendant Catton believed Plaintiff might have been on drugs, and indeed, asked him if he was. (Doc. 42 at 2-3). The charges were dismissed by a Tazewell County Assistant State's Attorney. (Doc. 34 at 2). Plaintiff then filed the instant suit, alleging claims under 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act (ADA), § 504 of the Rehabilitation Act, and Illinois tort law.

---

[1] Although Plaintiff does not specifically dispute Defendants' statement that Defendant Riggenbach was involved in restraining Plaintiff (Doc. 37 at 10-11), he disputes Defendant Riggenbach was involved at this point, suggesting it was instead Defendant Hangartner (Doc. 37 at 9-10); Defendants state Defendant Hangartner initially remained in the house (Doc. 37 at 9) but eventually assisted in restraining Plaintiff (Doc. 37 at 12). The precise identity as between these two defendants, however, is not necessary to resolve this motion.

3

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This burden may be met by demonstrating "an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If it is met, the non-moving party must present specific facts showing there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Mere allegations do not suffice; rather, the non-moving party must present admissible evidence. Fed. R. Civ. P. 56(e)(2); *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996).

At summary judgment, a judge's role is to "determine whether there is a genuine issue for trial," not to "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court therefore construes the record "in the light most favorable to the nonmovant." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

## DISCUSSION

Defendants have moved for summary judgment on five of Plaintiff's twelve claims: (1) a § 1983 claim against the individual Defendants for violating Plaintiff's due process rights by creating or increasing the risk of harm to Plaintiff when they took him outside, harming him in the act of restraining him, or failing to stop that harm (Count 3); (2) a claim under Title II of the ADA and § 504 of the Rehabilitation Act against Defendant City of East Peoria for failure to train the individual Defendants to recognize and care for persons with Plaintiff's disabilities (Count 4); (3) a claim against Defendant City of East Peoria for the same failure to train brought under § 1983 (Count 5); (4) a § 1983 claim against Defendant Catton for false arrest (Count 6); and (5) a claim for malicious prosecution against Defendant City of East Peoria (Count 7). (Doc.

34 at 2). Defendants also seek the complete dismissal of Defendant John Knapp, Fire Chief, (Doc. 34 at 2) which Plaintiff concedes is warranted (Doc. 37 at 47); the motion will accordingly be granted as to that ground.

### I. Due Process Claim (Count 3)

Plaintiff alleges Defendants violated his substantive due process rights by (1) attempting to move him outside, unsecured, in his allegedly postictal condition; (2) forcibly restraining him while he was in a post-seizure condition; and (3) those Defendants who "were aware of the beating and did nothing to stop it" and "acted with deliberate indifference to a substantial risk that Plaintiff would be harmed." (Doc. 25 at 6). Defendants argue this due process claim is essentially identical to Plaintiff's excessive force and failure to intervene claims, and therefore cannot stand. (Doc. 34 at 25). In response, Plaintiff focuses on the state-created danger portion of his claim. (Doc. 37 at 42-44). He purports to decline to address the elements and instead address only the argument that the claim is duplicative (Doc. 37 at 42 n. 3) but proceeds to address the elements of the state-created danger claim (Doc. 37 at 43-44). Defendants, in reply, argue summary judgment is warranted on the merits of the state-created danger claim. (Doc. 42 at 27-29).

Defendants are correct that "§ 1983 claims must be addressed under the most applicable constitutional provision." *Hambright v. Kemper*, 705 F. App'x 461, 462 (7th Cir. 2017). "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' ' " is used to analyze a plaintiff's claims. *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Summary judgment is therefore warranted on the due process claim to the extent it is duplicative

5

of the excessive force and failure to intervene claims. *See Williams v. Snyder*, 150 F. App'x 549, 552 (7th Cir. 2005).

However, Plaintiff is correct that the state-created danger theory is not duplicative of his other claims. *See Monfils v. Taylor*, 165 F.3d 511, 515–517 (7th Cir. 1998) (recognizing the existence of a substantive due process claim for a state-created danger). And regardless of the merits of Defendants' argument that Plaintiff cannot establish the elements of this claim, it was made for the first time in their Reply. (Doc. 42 at 27). "New arguments may not be raised in reply." *United States v. Dish Network LLC*, 75 F. Supp. 3d 916, 937 (C.D. Ill. 2014). Therefore, Plaintiff's due process claim survives summary judgment on the state-created danger theory alone.

## II.     ADA & Rehabilitation Act (Count 4)

As an initial matter, Plaintiff's First Amended Complaint (Doc. 25) generates some confusion as to which Defendant or Defendants he seeks to hold liable in the ADA and Rehabilitation Act claims. In the title of the claim, Plaintiff specifies it is "Against Defendant City of East Peoria," and four of the six paragraphs of allegations specific to that claim appear to be asserting a failure-to-train claim against Defendant City of East Peoria, with the remaining two simply reincorporating the preceding paragraphs and alleging injury. (Doc. 25 at 7). However, Plaintiff ends the claim with a prayer for relief "against the Individual Defendants." (Doc. 25 at 7). There is no individual liability under Title II of the ADA or § 504 of the Rehabilitation Action. *Stanek v. St. Charles Cmty. Unit Sch. Dist. #303*, 783 F.3d 634, 644 (7th Cir. 2015). The Court will therefore assume the claim is only against Defendant City of East Peoria.

Another more fundamental problem is revealed by the allegations in the First Amended Complaint. Plaintiff alleges Defendant City of East Peoria is liable under Title II of the ADA and § 504 of the Rehabilitation Act on a failure-to-train theory. (Doc. 25 at 7). Defendant City of East Peoria argues it lacks control over the training protocols used for EMTs and so cannot be liable for failing to train them. (Doc. 34 at 22). Plaintiff does not address this point at all in his Response; he has therefore failed to meet his burden of presenting evidence and argument on the failure-to-train theory. (*See* Doc. 37 at 30-40). Moreover, for the reasons stated in Section III, *infra*, if there was a failure-to-train that injured him, the failure to train was not by Defendant City of East Peoria but rather by regional and state actors.

Instead, Plaintiff argues he was a qualified individual under the ADA, was discriminated against by Defendants by their failure to provide him with a reasonable modification, and the lack of a reasonable modification was the but-for cause of his injury. (Doc. 37 at 30-40). Even assuming *arguendo* Plaintiff could succeed or proceed to trial on a failure-to-accommodate theory, that is not the theory he pled.

"When a new argument is made in summary judgment briefing, the . . . first step is to consider whether it changes the complaint's factual theory, or just the legal theories [P]laintiff has pushed so far." *Chessie Logistics Co. v. Krinos Holdings, Inc.*, 867 F.3d 852, 860 (7th Cir. 2017). If the argument changes the factual theory, it is a *de facto* amendment to the complaint and may be refused; if a change changes the legal theory, a court may hold a plaintiff to his original theory if it will cause unreasonable delay or increase the difficulty or cost of defense. *Id.*

The First Amended Complaint does not set out what reasonable modifications could have been made. Nor does it allege any person failed to provide a reasonable modification. The sole allegation mentioning the possibility of a modification is that Defendant City of East Peoria did

7

not train the other Defendants "to recognize, render aid to or accommodate individuals suffering from mental health and epileptic disabilities." (Doc. 25 at 4). To state a claim on a reasonable modification theory, Plaintiff would have needed more factual allegations, at the least that there existed a reasonable modification which, had it been made would have averted the harm to him. The facts relied upon by Plaintiff in his Response, whether or not they would have been sufficient, are a change to his factual theory. Therefore, Plaintiff's alteration of his theory is a *de facto* amendment to the First Amended Complaint, and it is one the Court will not allow.

Summary judgment in favor of Defendant City of East Peoria on this claim is therefore warranted.

### III.    § 1983 Claim against the City (Count 5)

A municipality may only be sued under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). This entails showing the alleged constitutional violation "was caused by (1) the enforcement of an express policy of the [city], (2) a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law, or (3) a person with final policymaking authority." *Palka v. City of Chi.*, 662 F.3d 428, 434 (7th Cir. 2011) (citation omitted).

Defendants argue to the extent Plaintiff relies upon the Peoria Area EMS System Prehospital Care Manual's Patient Restraint Policy (Doc. 34-12 at 7), his claim fails because the policy was put into place by the Peoria Area EMS System (PAEMS) and the Illinois Department of Public Health, not Defendant City of East Peoria. (Doc. 34 at 24). Plaintiff responds, cursorily, "It is undisputed that the City's Restraint Policy was an official policy promulgated by its

employees. *See* DSF ¶¶ 48, 52; *See also the City's Restraint Policy at DSF Ex. 34 at p. 7 of 12*."
(Doc. 37 at 45). Plaintiff's citations lead only to the content of the policy, not its promulgators. (Docs. 34 at 10-11, 34-12 at 7). By contrast, Defendants state, and Plaintiff does not dispute, that the training and work of the Defendant paramedics were determined by PAEMS, and Defendant City of East Peoria was not allowed to adopt other protocols. (Doc. 37 at 3). Moreover, Plaintiff does not dispute Defendants' statement that the medical director of PAEMS "has ultimate decision-making power to determine what EMS training gets implemented . . . [and] the Illinois Department of Public Health" has the final say. (Doc. 37 at 4).

Even assuming, *arguendo*, the Patient Restraint Policy caused a violation of Plaintiff's rights, the responsibility would lie at the feet of the Illinois Department of Public Health, not Defendant City of East Peoria. *Cf. McMillian v. Monroe Cty., Ala.*, 520 U.S. 781, 785 (1997). Plaintiff has made no argument and identified no evidence suggesting Defendant City of East Peoria had any level of control over the PAEMS protocols aside from the above-quoted *ipse dixit*. Summary judgment in favor of Defendant City of East Peoria is therefore warranted on this claim.

To the extent Plaintiff presents a failure to train theory regarding the EMTs separate from the PAEMS protocols, the same line of reasoning rebuts his effort. According to the undisputed facts, training for EMTs, like the policies they follow, is ultimately a matter determined by the Illinois Department of Public Health. (Doc. 37 at 4). Without reaching the question of whether Plaintiff could show the training practices evince deliberate indifference to constitutional rights, Defendant City of East Peoria cannot be held to account for training policies which it did not make a conscious choice to use.

In contrast, nothing suggests police officer training is beyond Defendant City of East Peoria's reach. (Docs. 37 at 5, 34-11 at 4 (identifying the East Peoria police chief as having "ultimate decision-making authority to decide what the officers get trained on")). Plaintiff's claim that Defendant City of East Peoria evinced deliberate indifference in its failure to train police officers (Doc. 37 at 47) therefore is susceptible to analysis on the merits.

"The failure to provide adequate training to its employees may be a basis for imposing liability on a municipality" but only where "the failure to train reflects a conscious choice among alternatives that evinces a deliberate indifference to the rights of the individuals with whom those employees will interact." *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012). Deliberate indifference arises where a defendant either does not adequately train its officers in light of foreseeable consequences or fails to act after repeated complaints of constitutional violations by its officers. *Miranda v. Cty. of Lake*, 900 F.3d 335, 345 (7th Cir. 2018). "In essence, the defendant must have actual or constructive notice of a problem." *Id.* Even then, "the alleged training deficiency" rather than "some other cause" must be "the moving force that actually caused" the constitutional violation. *Connick v. Thompson*, 563 U.S. 51, 59 n.5 (2011) (internal citations and quotation marks omitted).

It is undisputed that Defendant City of East Peoria does not train its police officers on the effects of a seizure (Doc. 42 at 8) or how to provide ADA accommodations during an arrest (Doc. 37 at 5). It is also undisputed is that officers are trained to contact the Fire Department or Emergency Response Services if interacting with an individual appearing to have a mental health issue. (Doc. 37 at 5). But regardless of whether this is sufficient training, on the facts as presented in this posture, there is no causal link to Plaintiff's injury.

Plaintiff does not proffer evidence that if there was deliberate indifference, failure to train the officers caused him harm. Indeed, the whole of Plaintiff's argument on the element of causation is "[w]hether [the alleged] indifference was the cause of [Plaintiff's] harm is a jury question." (Doc. 37 at 47). This is not sufficient. While causation is indeed often best left to juries, a plaintiff defending against a motion for summary judgment must be able to show some admissible evidence from which a jury could determine a defendant caused the plaintiff's injuries. *See Gayton v. McCoy*, 593 F.3d 610, 624–25 (7th Cir. 2010).

The evidence presented, viewed in the light most favorable to Plaintiff, could allow a jury to conclude when the police officers arrived on the scene, Plaintiff was being physically harmed by the paramedics. (Doc. 37 at 23). But Plaintiff does not identify any evidence demonstrating police officers were involved in restraining Plaintiff, nor has Plaintiff directed the Court to any evidence that the police did not intervene.[2] No jury could conclude that any amount of further training of police officers would have prevented Plaintiff's injury related to the alleged excessive force of the paramedics on this record because he has not put forth evidence that any police officer caused or through inaction allowed harm to come to him.[3] "Summary judgment is a critical moment for a non-moving party. It must 'respond to the moving party's properly supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial.' " *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887,

---

[2] The Court is aware of allegations to the contrary in the First Amended Complaint (*e.g.*, Doc. 25 at 3 (alleging Defendant Catton strangled Plaintiff)). But "to meet his burden at summary judgment . . . a plaintiff must do more than simply point to the allegations in his complaint." *Estate of Perry v. Wenzel*, 872 F.3d 439, 461 (7th Cir. 2017). Plaintiff does not identify evidence to back up the claims in the First Amended Complaint on this ground, or indeed even assert those same allegations in responding to Defendants' motion.

[3] The Court does not address any arguments that any other injury—such as Plaintiff's arrest or harm from being handcuffed—might have resulted from a failure to train police officers because Plaintiff does not mention any such other injuries in his briefing on the *Monell* claim. (Doc. 37 at 44-47).

894 (7th Cir. 2018) (quoting *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017)). As Plaintiff has not done so, Defendant City of East Peoria's motion is granted on this ground.

IV. **The Court Declines to Grant Summary Judgment on the Issue of Probable Cause (Counts 6 & 7)**

Defendants argue the § 1983 false arrest claim and the malicious prosecution claim fail because Defendant Catton had probable cause to believe Plaintiff committed aggravated battery. (Doc. 34 at 15-16). Plaintiff responds that a jury could find Defendant Catton lacked probable cause to believe Plaintiff had manifested the *mens rea* element of aggravated battery or, in the alternative, that Plaintiff acted in self-defense. (Doc. 37 at 40-42).

As the parties correctly agree, if Defendant Catton had probable cause, both the false arrest claim and the malicious prosecution claim cannot succeed. *Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 713 (7th Cir. 2013) ("The existence of probable cause to arrest is an absolute defense to any § 1983 claim against a police officer for false arrest . . . ."); *Williams v. City of Chi.*, 733 F.3d 749, 759 (7th Cir. 2013) ("[T]he absence of probable cause for the proceedings" is an element of malicious prosecution under Illinois law.). Probable cause "is a fluid concept that relies on the common-sense judgment of the officers based on the totality of the circumstances." *United States v. Reed*, 443 F.3d 600, 603 (7th Cir. 2006). "Although it requires something more than a hunch, probable cause does not require that [engagement in criminal activity] was more likely than not . . . the officer's belief that the arrestee was committing a crime need only be reasonable." *Seiser v. City of Chi.*, 762 F.3d 647, 654 (7th Cir. 2014) (quoting *Abbott*, 705 F.3d at 714) (alterations omitted)); *Williams*, 733 F.3d at 759 ("In a malicious prosecution case, probable cause is defined as 'a state of facts that would lead a person of ordinary care and prudence to believe or entertain an honest and sound suspicion that the accused committed the offense

charged.'") (quoting *Gauger v. Hendle*, 954 N.E.2d 307, 329–30 (Ill. App. 2011)). Determining whether probable cause existed "entails a purely objective inquiry; the officer's subjective state of mind and beliefs are irrelevant." *Abbott*, 705 F.3d at 714. Crucially, however, the inquiry is made with regard to the facts as the officer understood them at the time of the arrest. *Id.* The Court can make a probable cause determination on summary judgment, if the relevant underlying facts are not in dispute. *Id.*

"The existence of probable cause . . . depends, in the first instance, on the elements of the predicate criminal offense(s) as defined by state law." *Id.* at 715; *Williams*, 733 F.3d at 759 ("Malicious prosecution is offense-specific, so we focus our attention on the . . . charge."). The relevant offense here is aggravated battery in violation of 720 ILCS 5/12-3.05.[4] A battery in Illinois occurs where a person "knowingly without any legal justification by any means (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual." 720 ILCS 5/12-3(a). Any battery upon a fireman "performing his or her official duties" elevates the offense to aggravated battery. 720 ILCS 5/12-3.05(d)(4)(i). "Thus, in order to be guilty of aggravated battery to a [fireman], [the charged party] must have (1) known that [the fireman] was a [fireman] performing his official duties; and (2) intentionally or knowingly; (3) voluntarily; (4) without legal justification; (5) caused bodily harm to" the fireman. *Tolliver v. City of Chi.*, 820 F.3d 237, 242 (7th Cir. 2016).

There is no dispute that Defendant Catton was informed, and thus had probable cause to believe, Plaintiff struck Defendant Duckworth in the face (whether or not the strike actually occurred), nor is there any dispute that Defendant Duckworth was a firefighter engaged in the

---

[4] Although "the offense for which probable cause exists need not be the subjective offense for which the officer was conducting the arrest," *Ramos v. City of Chi.*, 716 F.3d 1013, 1018 (7th Cir. 2013), Defendants do not argue Defendant Catton would have probable cause as to any other offense.

13

performance of his duties at the time. (*See* Doc. 37 at 40). However, Plaintiff argues he did not knowingly commit a battery, know the person he hit was a fireman, or act without justification. (Doc. 37 at 40).

As an initial matter, Plaintiff's argument that Defendant Catton knew Plaintiff had acted in self-defense and therefore lacked probable cause to believe the alleged battery occurred without legal justification fails on the undisputed facts. "The existence of a legal justification for a battery is not an element of the offense, but rather is an affirmative defense." *McBride v. Grice*, 576 F.3d 703, 707 (7th Cir. 2009) (citing *People v. Meor*, 910 N.E.2d 575, 578–79 (Ill. 2009)). While it is true that "[a] police officer may not ignore conclusively established evidence of the existence of an affirmative defense" in determining whether there is probable cause, "the officer has no duty to investigate the validity of any defense." *Hodgkins ex rel. Hodgkins v. Peterson*, 355 F.3d 1048, 1061 (7th Cir. 2004).

If Defendant Catton had observed the alleged strike of Defendant Duckworth, there might be some merit to Plaintiff's argument. But Defendant Catton arrived on the scene after the alleged strike occurred; even accepting Plaintiff's account fully, Defendant Catton was merely told Defendant Duckworth had been hit. (Doc. 37 at 41). This means even if Plaintiff "was being suffocated to death" because "[t]here were 4-5 men on top of [him], pressing him into the ground" and "a reasonable officer could see that [Plaintiff] was scared and in pain" (Doc. 37 at 41) when Defendant Catton arrived, Defendant Catton would not have known whether the same situation justifying a strike in self-defense existed at the time of the alleged strike. In short, Defendant Catton lacked conclusively established evidence of self-defense and was not required to continue investigating the defense. Therefore, Plaintiff's potential affirmative defense would not defeat the existence of probable cause.

However, the current record does not sufficiently explore the totality of the circumstances related to *mens rea* to determine whether or not summary judgment is warranted. "Before the court can apply the law, it must have an adequate factual basis for doing so. In some situations, a fuller development of the facts may serve to clarify the law or help the court determine its application to the case." 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 2725 (4th ed.); *see also* 11 James W.M. Moore et al., Moore's Federal Practice § 56.07[3] (3d ed. 2019) (recognizing courts' limited discretion "to deny an otherwise proper summary judgment motion" where further proceedings "will sharpen the facts and law at issue and lead to a more accurate or just decision."); *Fosbinder-Bittorf v. SSM Health Care of Wis., Inc.*, No. 11-cv-592, 2013 WL 3287600, at *10 (W.D. Wis. Apr. 4, 2013). "[A] court has discretion to deny a motion for summary judgment if it believes that 'the better course would be to proceed to a full trial.' " *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)); *see also Greene v. Will*, No. 3:09-cv-510, 2018 WL 1964443, at *5 (N.D. Ind. Apr. 26, 2018). The Court believes denying summary judgment to allow for further factual development is the wisest course here.

By the time he arrested Plaintiff five days after the incident, Defendant Catton knew Plaintiff had a seizure prior to the incident and was aware of at least some of Plaintiff's disorientation. The crux of the probable cause determination is how disoriented a reasonable officer would have understood Plaintiff to have been at the time of the alleged strike and what a reasonable officer would have understood about the ability of a seizure to interfere with a person's ability to comprehend the world around him from the information in Defendant Catton's possession when he arrested Plaintiff. The record is insufficient to make a probable cause determination at this time; whether an officer could have reasonably believed Plaintiff was able

to form the requisite *mens rea* under such circumstances cannot be determined without a full airing of the totality of the circumstances.

The Court denies summary judgment on Counts 6 and 7. Because probable cause is a legal determination, should the matter proceed to trial the Court may be receptive to a motion for directed verdict on this ground after the close of evidence. But on this record, "summary judgment is too blunt a weapon with which to win the day." *Nat. Res. Def. Council v. Ill. Power Res. Generating, LLC*, No. 1:13-cv-1181, 2019 WL 208856, at *7 (C.D. Ill. Jan. 15, 2019) (quoting *Miller v. Gen. Outdoor Advert. Co.*, 337 F.2d 944, 948 (2d Cir. 1964)).

## CONCLUSION

For the reasons set forth above, Defendants' Motion, Doc. 34, is GRANTED IN PART and DENIED IN PART. It is granted partially but not wholly with regard to Count 3, granted with regard to Counts 4 and 5, and denied with regard to Counts 6 and 7. The motion is also granted with regard to Defendant Knapp, who is therefore dismissed from this case.

Signed on this 28th day of August, 2019.

s/ James E. Shadid
James E. Shadid
United States District Judge